CAHN v. GUION

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8221. Decided May 30, 1927.

First Publication of this Opinion.

187a. BUILDING PERMITS—Do not give property rights that cannot be divested by action of building inspector or city council.
1295. ZONING ORDINANCES—One who has procured building permit, has procured no property right that is immune to invasion by zoning ordinance legislation.

291. CONSTITUTIONAL LAW—874. Ordinances—637. Initiative and Referendum—Where referendum petition to city ordinance has been filed, constitutionality of such ordinance may not be attacked, until validity has been determined by election.

Appealed from Common Pleas.
Decree for defendant.

Mooney, Hahn, Loeser & Keough, Cleveland, for Cahn.

Gordon & Gordon and Paul Howland, Cleveland, for Guion.

VICKERY, J.

In the court below, Louis Cahn brought this action asking for a mandatory injunction to compel the building inspector of Cleveland, Wm. D. Guion, to re-issue several permits to him, or rather, to state it correctly, to compel him to withdraw his withdrawal of permits, that he had theretofore issued, to build on five parcels of land on the west side of West Boulevard between Clifton Boulevard and Lake Avenue and east of West 110th Street.

The situation is rather peculiar, and, inasmuch as the plaintiff claims some equities, it might be well to advert to a situation which would throw some light on his standing in a court of equity.

The property between West Boulevard and West 110th Street, to say nothing of further west between Clifton Boulevard and Lake Avenue, is highly restricted residence property and has been for a great number of years. All the buildings that have ever been on this tract of land have been high class residences.

The restrictions on this property were about to expire on the 8th day of January, 1927. Apparently plaintiff became aware of this and recently, just prior to the proceedings hereinafter stated, bought in these properties. I speak of this, because he cannot say that he was deprived of the use of his property, because it was bought just prior to the events which hereafter transpired, not that he did not have the legal right, not that the law was not upon his side, that he could not claim all the benefits of the law, but in an equitable proceeding this should be taken into consideration as bearing upon the parties.

There had been some talk about the expiration of these restrictions and an effort was about to be made to protect this property from the building of stores and apartment houses within this district. It was sought to do this by passage, in the City Council of Cleveland,

of what is known as a stop-gap ordinance, that is, an ordinance that would be so comprehensive and so drawn that it would serve to prevent the erection of apartment houses and stores or business houses within this district, until there could be a proper zoning ordinance prepared. By the action of Council on the 15th day of November, 1926, this so-called stop-gap ordinance was passed. It was not passed as an emergency ordinance, and so did not go into effect until forty days thereafter, to-wit, on the 26th day of December, 1926.

Notwithstanding that the plaintiff could not, at this time, erect any buildings of the character that he seeks to erect upon this property because the restrictions were still in force, he, on the 19th of November, procured a permit to erect, I believe, stores and apartments on Clifton Boulevard, within this district, and later, perhaps on December 9th, he procured three more permits, and, on Dec. 23rd, he procured another. These are the five permits, the revocation of which he seeks to compel the Building Inspector to withdraw.

The ordinance was passed prior to the getting of these permits and the last one he got was three days before the ordinance went into effect. He could not tell whether it would be effective from that day or not because petitions had been circulated for a referendum. However, so far as it appears now, the ordinance went into effect on the 26th of December, a petition filed with the Clerk having been found to be insufficient. Thereafter an amended petition was filed which the clerk certified was sufficient, but there has been no vote on that question as to whether there shall be a referendum, and that is still pending in court.

The Building Inspector, upon the passage of this ordinance and its going into effect, revoked these building permits, and it is to that action that these proceedings are brought.

It is argued strenuously, by plaintiff in this action, that these permits gave a certain property right that could not be divested by any action of the Building Inspector nor by the City Council itself, because, it is argued, they are within the inhibition of the Constitution of the United States, which provides that no retroactive law shall be passed, nor shall there be any law passed impairing the obligation of a contract. There would be some strength in this argument, if it had not been wholly disposed of by the Supreme Court in the case of State ex Ohio Hair Products Co. v. Rendigs, Bldg. Comm. 98 OS. 251, in which case the Supreme Court absolutely disposed of this contention. It is argued, to distinguish this case from the one at bar, that it was sought in the Hair Products case to erect a business that was deleterious to health, in a residence district, while in the instant case there is nothing detrimental so far as it is claimed, at least it is not a nuisance per se to erect apartment houses and stores, as it is sought to erect in the instant case, but the Supreme Court, in the Hair Products case, held that it was within the police power of the City to zone against such buildings, as it was proposed to erect in the Cincinnati District, and that it came within the police power of the city and therefore was a valid exercise of police power, and that the man who had procured these permits, had procured no property right that was immune to invasion by such legislation.

The Supreme Court of the United States, in the case of Village of Euclid v. The Ambler Realty Co., decided that it is not necessary to have a nuisance per se before the Municipality can zone against the erection of certain buildings in a certain area.

We do not think that the plaintiff is entitled to the remedy he seeks upon the first ground of error, the one that he has argued most strenuously in his brief.

There is another ground that he refers to and that is that the whole ordinance is unconstitutional, that it takes private property without due process of law, in violation of the constitution of the United States and the constitution of Ohio. He points out what he regards as a very conglomerate ordinance. He calls attention to the number of districts. I believe the ordinance defines a district as any strip of land on either side of the street between two intersecting streets. Now if I were going to argue this case, I should take issue with learned counsel for plaintiff that instead of these numerous districts making the ordinance unconstitutional, they would make the ordinance constitutional. In other words, the ordinance is so elastic and so adaptable to the needs of different communities, that a community or district can have almost anything they want by the proper majority, and why not? They are the ones that are interested and consequently they should have their say, and, inasmuch as it is submitted largely to the owners of the property in the various districts, it would be difficult to see how it could be attacked as being unconstitutional. Suppose, however, that there were certain districts and certain features of this ordinance that would be unconstitutional because of the taking of property without due process of law, or other infirmity that might exist in it contrary to the constitution of Ohio or the United States, still, before the plaintiff can avail himself of that, he must bring the instant case within that provision of the law.

There is another very potent reason why, at this time at least, the court would be compelled to find for the defendant. Strictly speaking, there is no ordinance, for, within the time allowed by the City Charter, petitions in referendum were filed, or it is claimed they were filed, and whether there were any such petitions depends upon the final decision of that question in the case of Dillon v. City of Cleveland, now pending in this court, but, in the present instance, it appears that there are referendum petitions filed. Consequently the ordinance never went into effect, and the referendum is a right of the citizens of Cleveland, and it puts them in the position, if you please, of a third house of legislation. Until all of the various departments in the legislative branch of the City Government have acted, there is no ordinance, the constitutionality of which could be attacked.

We are of the opinion that the plaintiff is not entitled to the relief sought and there will be a decree for the defendant.

(Sullivan, PJ., concurs; Levine, J., dissents.)

LEVINE, J., DISSENTING:

It appears that the plaintiff is the holder of five permits to erect buildings on Lake Avenue and Clifton Boulevard in the City of Cleveland. There is a clear case in the record showing that, in reliance upon these permits, plaintiff his arranged his finances, and executed mortgages and entered into contracts, and was about to begin the construction of his buildings commencing January 2, 1927. On the 30th day of December, 1926, the defendant wrote five letters to the plaintiff in which he revoked these permits, giving as his sole reason for doing so, the provisions of ordinance No. 76158, which is the so-called stop-gap ordinance, which is set forth in full in defendant's answer. If the stop-gap ordinance has not as yet become effective because suspended by the filing of referendum petitions, then it follows that it furnishes no excuse to the defendant for the intended revocation of the plaintiff's permits.

The case of State ex v. Dauben, 99 OS. 406, holds that statutes or ordinances of a penal nature, which restrain the exercise of any trade or impose restrictions upon the use of private property, will be strictly construed and their scope cannot be extended to include limitations not therein clearly prescribed, and that exemptions from such restrictive provisions will be liberally construed.

Defendant claims that the so called stop-gap ordinance became effective on Dec. 26, 1926. Of course that cannot be held to be a correct statement, because the operation of the ordinance was undoubtedly suspended by the filing of a referendum petition, but, conceding that the statement is correct, it still appears that the ordinance did not become effective until three days after the issuance of the last permit issued to the plaintiff. The stop-gap ordinance does not contain any provision authorizing the defendant to revoke permits previously granted. A stop-gap ordinance, if valid, must be construed to have a prospective effect, but never a retroactive effect.

Ample authority is cited on the point that a municipal building permit or license cannot arbitrarily be revoked, particularly where, on the faith of it, the owner has incurred material expense.

The defendant relies on the case of State ex Ohio Hair Products Co. v. Rendigs, 98 OS. 251. In my opinion the Rendigs case can easily be differentiated from the case at bar, because, in that case, the Council of the City of Youngstown directed the Building Commissioner to revoke the permits for the reason that the buildings proposed to be erected by the plaintiff constituted a nuisance per se. No such claim is made in the case at bar.

Were we to find that the answer of the defendant presents a defense and that the statement, as signed in his letter for the revocation of the permits, namely, the adoption of the stop-gap ordinance, constitutes a basis in fact, and were we to hold that the stop-gap ordinance was in effect and operation and is applicable to the determination of the question presented in this case, I am constrained to hold that the stop-gap ordinance is not a valid exercise of police power, for the reason that it is unreasonable and arbitrary in its operation. The evidence presented clearly shows the great confusion which would result from its operation. It is not a scientific structure, but may be denominated the "Hit or Miss Ordinance."

There is no doubt that municipalities are empowered to pass zoning ordinances, but such power is limited by these essential principles, namely: that the ordinance must not be arbitrary and unreasonable, that it must be uniform in its operation. The attempt of a municipality, under the guise of legislation, to interefere with the proper use of property, when such interference is not necessary for the public good, is a usurpation of the police power. This so-called stop-gap ordinance seeks to delegate to the Board of Appeals, legislative authority. Under its provisions the erection of a building forbidden by the stop-gap ordinance may, by order of the Board of Appeals be held proper to be erected. Even if this ordinance were held to be a proper and legitimate exercise of the police power, which I emphatically dispute, it destroyed its own validity by enabling the so-called Board of Appeals to undo the provisions of the ordinance itself. Penal laws must be definite and certain, and not conditional, or made to depend upon contingencies. They must be so drawn as to enable a member of the public, by reading its provisions, to determine what is proper under the ordinance, and what would constitute a violation of its provisions. If this ordinance is to be finally held valid, an anomalous situation would result. One person, erecting a building in violation of the provisions of the ordinance, would be held subject to arrest, conviction and punishment. Another person, erecting a building in violation of the provisions of the ordinance, would be considered within his legal rights, notwithstanding the violation of the ordinance, because the Board of Appeals decreed that he may do so notwithstanding the ordinance.

For the reasons above stated, I dissent from the opinion of the majority of the court, and hold to the view that the plaintiff is entitled to the relief prayed for.